UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| HEMP ASSOCIATION OF LOUISIANA, and * | |
| CYPRESS HEMP, LLC * | |
|     Plaintiffs * | |
| * | CIVIL ACTION NO.: |
| VERSUS * | |
| * | JUDGE _____ |
| GOVERNOR JEFF LANDRY, * | |
| in his official capacity, * | MAG. _____ |
| ATTORNEY GENERAL LIZ MURRILL, * | |
| in her official capacity, and * | |
| HILLAR MOORE, III, in his official capacity * | |
| As District Attorney East Baton Rouge Parish, * | |
| Louisiana * | |
|     Defendants * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Come Plaintiffs Hemp Association of Louisiana (the "Association") and Cypress Hemp, LLC ("Cypress Hemp") (collectively "Plaintiffs"), by counsel, for their Complaint against Defendants, Governor Jeff Landry, in his official capacity; Attorney General Liz Murrill, in her official capacity; and Hillar Moore, III, in his official capacity as District Attorney for East Baton Rouge Parish, Louisiana (collectively, "Defendants" or "State"), and state:

### INTRODUCTORY STATEMENTS

1.    This is a lawsuit challenging Act No. 752 of the Louisiana Legislature's 2024 Regular Session ("Act 752"), previously known as House Bill No. 952, which attempts to recriminalize certain hemp-derived cannabinoid products and obstruct the shipment and transportation of the same, in direct conflict with well-established federal laws encouraging the redevelopment of a domestic supply chain of hemp and hemp products in Louisiana and across the country. A copy of Act 752 is attached in pertinent part as **Exhibit 6**.

1

2.    Plaintiff Hemp Association of Louisiana is a non-profit trade association whose mission is to provide support to Louisiana's hemp-related businesses in the interest of developing a successful state industry. The Association is comprised of licensed and non-licensed members that cultivate, produce, manufacture, distribute, wholesale, receive, and retail hemp and hemp-derived products in and through Louisiana. These hemp-derived products include, but are not limited to, products intended for consumption or topical use and contain more than 0.3 percent total THC concentration by dry weight but less than or equal to 0.3 percent total delta-9 THC concentration by dry weight (hereinafter "Farm Bill Products"). Through its members, the Association will suffer immediate, irreparable harm. *See* **Exhibit 8**.

3.    Plaintiff Cypress Hemp, LLC, wholesales, distributes, and retails hemp and hemp-derived products in and through Louisiana. These hemp-derived products include, but are not limited to, Farm Bill Products. Cypress Hemp will suffer immediate, irreparable harm because it is threatened with criminal prosecution, monetary fines, financial ruin, the seizure of its products, and will be forced to close and/or lay off employees. *See* **Exhibit 8**.

4.    On December 20, 2018, President Donald Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. 115-334 (the "2018 Farm Bill"). The 2018 Farm Bill established a framework for the domestic supply chain of hemp and hemp products in three important ways. First, it permanently decoupled hemp from marijuana under the Controlled Substances Act and exempted hemp-derived tetrahydrocannabinol (THC) from its definition. Second, it deliberately expanded the definition of "hemp" to include "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 16390(1). Third, it

expressly prohibited individual states from interfering with the transportation and shipment of hemp and hemp products through interstate commerce.

5.      In general, as courts throughout the country have affirmed, the only relevant statutory metric in analyzing whether a product is to be considered hemp or marijuana under the 2018 Farm Bill is the concentration of delta-9 THC on a dry weight basis. If the product has 0.3 percent delta-9 THC or less on a dry weight, then it is hemp. If the product contains more than 0.3 percent delta-9 THC, it is marijuana. *See, e.g.*, *Anderson v. Diamondback Invest. Grp., LLC*, No. 23-1400, 2024 WL 4031401, at *17 (4th Cir. Sept. 4, 2024); *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682 (9th Cir. 2022).

6.      Nothing in the 2018 Farm Bill limits the concentration of non-delta-9 THC derivatives (like delta-8, delta-10, etc.), which occur naturally in the Cannabis sativa L. plant, to a total percentage of 0.3 percentage by dry weight. *See Anderson*, 2024 WL 4031401; *AK Futures*, 35 F.4th 682.

7.      The 2018 Farm Bill's re-establishment of a domestic supply chain of hemp and hemp products has led to a robust hemp-derived cannabinoid market in Louisiana and across the country. (*See* Act No. 164 of the Louisiana Legislature's 2019 Regular Session creating a framework for the research, growth, and sale of industrial hemp in Louisiana).

8.      The existing hemp-derived cannabinoid market that farmers, small business owners, and consumers have built and relied upon over the last five years would be eliminated under Act 752 because the new law impermissibly narrows the definition of hemp to recriminalize the possession, manufacturing, transportation, and shipment of certain popular hemp-derived cannabinoid products. This would lead to thousands of lost jobs around the state and turn farmers,

business owners, and consumers – including Plaintiffs – into criminals overnight, despite no change in federal law.

9.      Plaintiffs in this case cultivate, manufacture, distribute, wholesale and retail hemp plants and hemp-derived products in and through Louisiana. Until June 19, 2024, Plaintiffs benefitted for several years from operating within a legal market through a supply chain of thousands of farmers, processors, distributers, wholesalers, and retail shops throughout Louisiana and many other states throughout the nation.

### JURISDICTION AND VENUE

10.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343. *See also C.Y. Wholesale, Inc. v. Holcomb*, No. 1:19-CV-02659-SEB-TAB, 2020 WL 6583069, at *3 (S.D. Ind. Nov. 10, 2020) (ruling that a trade association of hemp-derived products businesses had standing to challenge Indiana's amendments to its hemp products act).

11.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

12.      Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201, 2202.

13.      This action is also brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

### THE PARTIES

14.      Hemp Association of Louisiana is a Louisiana non-profit trade association comprised of businesses that cultivate, manufacture, distribute, wholesale, and retail hemp and hemp-derived products in and through Louisiana, including Farm Bill Products.

15.     Cypress Hemp, LLC, is a Louisiana limited liability company with its principal place of business located in Louisiana. Cypress Hemp is a hemp wholesaler, distributor, and retailer of consumable hemp-derived products, including Farm Bill Products.

16.     Governor Jeff Landry is charged with the executive authority of state government for the State of Louisiana, including the administration and enforcement of the laws of Louisiana. Governor Landry is sued in his official capacity due to his signing of Act 752 into law and his role as chief executive overseeing law enforcement.

17.     Attorney General Liz Murrill is charged with enforcing the laws of Louisiana. Attorney General Murrill is sued in her official capacity due to her enforcement authority pursuant to Act 752. In accordance with the provisions of Louisiana Code of Civil Procedure 1880, the Attorney General of the State is being served with a copy of the Complaint in this matter.

18.     Hillar Moore, III, is the District Attorney for East Baton Rouge Parish, Louisiana. He is sued in his official capacity only, as a District Attorney for the State of Louisiana, a position which he acts under color of law to enforce Louisiana's criminal laws, including Act 752.

19.     On information and belief, Defendants will exercise their discretion and legal authority to implement and enforce Act 752.

20.     Plaintiffs seek a temporary and permanent injunction to prevent the enforcement of Act 752.

### FACTS COMMON TO ALL COUNTS

21.     On February 7, 2014, President Barack Obama signed into law the Agricultural Act of 2014, Pub L. No. 113-79 (the "2014 Farm Bill"). The 2014 Farm Bill provided that "[n]otwithstanding the Controlled Substances Act . . . or any other Federal law, an institution of higher education . . . or a State department of agriculture may grow or cultivate industrial hemp,"

5

provided it is done "for purposes of research conducted under an agricultural pilot program or other agricultural or academic research" and those activities are allowed under the relevant state's laws. 7 U.S.C. § 5940(a).

22.     The 2014 Farm Bill defines "industrial hemp" as the "plant Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weigh basis." 7 U.S.C. § 5940(a)(2).

23.     The 2014 Farm Bill defines an "agricultural pilot program" as a "pilot program to study the growth, cultivation, or marketing of industrial hemp . . . in States that permit the growth or cultivation of industrial hemp under the laws of the state in a manner that[:] ensures that only institutions of higher education and State departments of agriculture are used to grow or cultivate industrial hemp[;] requires that sites used for growing or cultivating industrial hemp[;] requires that sites used for growing or cultivating industrial hemp in a State be certified by, and registered with, the State department of agriculture[;] and authorizes State departments of agriculture to promulgate regulations to carry out the pilot program in the States in accordance with the purposes of [Section 7606 of the 2014 Farm Bill]." 7 U.S.C. § 5940(a)(2).

24.     The 2014 Farm Bill made the federal government's intentions clear: hemp with low levels of delta-9 THC is to be treated as an agricultural commodity once again in the United States.

25.     On December 20, 2018, President Donald Trump signed into law the 2018 Farm Bill. A copy of the 2018 Farm Bill is attached in pertinent part as **Exhibit 1**.

26.     The 2018 Farm Bill permanently removed hemp and THCs in hemp from the Controlled Substances Act and required the United States Department of Agriculture ("USDA") to be the sole federal regulator of hemp production, leaving no role for the Drug Enforcement Agency ("DEA").

27.    The 2018 Farm Bill expanded the definition of hemp by defining it as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Thus, the 2018 Farm Bill's expansion broadly redefined hemp as including all products derived from hemp, so long as the delta-9 THC concentration is not more than 0.3 percent on a dry weight basis, and it is agnostic on manufacturing processes.

28.    As multiple, federal Circuit Courts of Appeal have held, the text of the 2018 Farm Bill is "unambiguous":

> A straightforward reading of § 1639o yields a definition of exempted, legal hemp applicable to *all products* that are sourced from the cannabis plant, contain no more than 0.3 percent delta-9 THC, and can be called a derivative, extract, cannabinoid, or one of the other enumerated terms.

*Anderson v. Diamondback Invest. Grp., LLC*, No. 23-1400, 2024 WL 4031401, at *17 (4th Cir. Sept. 4, 2024) (cleaned up) (emphasis added) (quoting *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682 (9th Cir. 2022)).

29.    The Conference Report for the 2018 Farm Bill made it clear that Congress intended to preclude a state from adopting a more restrictive definition of hemp: "state and Tribal governments are authorized to put more restrictive parameters on the production of hemp, but *are not authorized to alter the definition of hemp* or put in place policies that are less restrictive." Conference Report for Agricultural Improvement Act of 2018, p. 738 (emphasis added). A true and accurate copy of the relevant pages from the Conference Report is attached as **Exhibit 2**.

30.    The 2014 Farm Bill made clear that Congress intended the exploration of a possible market for hemp as an agricultural commodity, and the expanded definition of hemp in the 2018 Farm Bill made clear that Congress intended for the hemp industry to be innovative in exploring,

creating, and sustaining viable submarkets beyond grain and fiber to incorporate consumable products as well, limited only by the delta-9 THC concentration levels.

31.    The 2018 Farm Bill required the USDA to issue regulations and guidelines for states to implement the relevant hemp portions of the 2018 Farm Bill as well as regulations and guidelines for states that choose not to regulate the production of hemp in their borders. The fact that a farmer could grow hemp under a federal license if a state chose not to create its own regulatory program demonstrates Congress' resolve to re-establish a domestic supply chain of hemp and hemp products. 7 U.S.C. § 1639r(a)(1)(A).

32.    According to the USDA's Final Rule, "produce" is a common agricultural term that means "[t]o grow hemp plants for market, or for cultivation for market, in the United States." 7 C.F.R. § 990.1.

33.    The Final Rule further demonstrated that the 2018 Farm Bill preserved the authority of individual states to regulate the act of producing hemp if they chose to do so (e.g. set back requirements, performance-based sampling), but individual states could not alter the definition of hemp or regulate in a manner that reaches beyond production. In other words, the 2018 Farm Bill permits states to regulate the production, i.e., cultivation, of hemp if they chose to do so, but nothing more.

34.    Significantly, the 2018 Farm Bill expressly prohibits states from blocking the transportation or shipment of hemp and hemp products produced in accordance with the 2018 Farm Bill:

> SEC. 10114. INTERSTATE COMMERCE.
>
> (a) Rule of Construction. Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

8

(b) Transportation of Hemp and Hemp Products. No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

35.    This explicit protection for hemp and hemp products in interstate commerce would be rendered meaningless if individual states were permitted to criminalize certain hemp and hemp products and frustrate the overarching goal of the 2014 and 2018 Farm Bills, which is to treat hemp and hemp products like a commodity once again.

36.    The overarching goal of treating hemp and hemp products like a commodity is further illustrated by the USDA specifically adding hemp to the Agricultural Technical Advisory Committee ("ATAC") for Trade in Tobacco, Cotton, and Peanuts.[1] There are a total of six (6) ATACs that advise the Secretary of Agriculture and the U.S. Trade Representative about a variety of agricultural trade matters.

37.    Furthermore, the General Counsel for the USDA has authored a memorandum discussing the prohibition on states restricting the transportation or shipment of hemp, concluding that any state law purporting to do so has been preempted by Congress. A true and accurate copy of the USDA Memorandum is attached as **Exhibit 3**.

38.    In short, the 2018 Farm Bill (1) broadly defined hemp as including all extracts and derivatives whether growing or not, (2) legalized hemp-derived products with a delta-9 THC concentration of not more than 0.3 percent on a dry weight basis, (3) is agnostic on the

---

[1] *See* https://www.federalregister.gov/documents/2023/06/13/2023-12649/amendment-notice-of-intent-for-agricultural-policy-advisory-committee-apac-and-the-related (last visited July 31, 2023).

manufacturing processes for finished hemp products, and (4) mandated that no state or Indian tribe could prohibit the transportation or shipment of hemp and hemp products in interstate commerce.

## LOUISIANA'S ACT 752 IS UNCONSTITUTIONAL

39.    In 2019, in response to the 2018 Farm Bill, Louisiana's Legislature passed Act 164 of 2019, which decoupled hemp from marijuana by removing a broad definition of hemp—including all such hemp containing not more than 0.3 percent of delta-9 tetrahydrocannabinol on a dry weight basis—from the State's Uniform Controlled Dangerous Substances Laws ("CDS Laws").[2]

40.    In part, the Act 164's amendment to the CDS Law stated:

> Industrial hemp exemption. Notwithstanding the definitions provided for in R.S. 40:961(6) [cannabis] and (27) [marijuana], the provisions of the [CDS] Law shall not apply to industrial hemp or consumable hemp products as provided for in Parts V and VI of Chapter 10-A of Title 3 of the Louisiana Revised Statutes of 1950.

*See* LA. STAT. ANN. § 40:961.1.

41.    Accordingly, the definition of "industrial hemp" is currently the same in both Parts V (Industrial Hemp) and VI (Consumable Hemp Products)[3] of Title 3 to Louisiana's Revised Statutes, to wit:

> 'Industrial hemp' means the plant Cannabis sativa L. and any part of such plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total *delta-9* THC concentration of not more than 0.3 percent on a dry weight basis.

LA. STAT. ANN. §§ 3:1462(10), 3:1481(6) (emphasis added).

---

[2] A copy of Act No. 164 of 2019 can be found at https://legiscan.com/LA/text/HB491/2019 (last visited September 10, 2024).
[3] Act 752 amends Part VI's definition of "industrial hemp," discussed *infra*.

42.     And Part VI Chapter 10-A of Title 3 (hereinafter "Consumable Hemp Products Act") defines "consumable hemp product" as "any product *derived from industrial hemp* that contains any cannabinoid, including cannabidiol [or THC once Act 752 is effective], and is intended for consumption or topical use." LA. STAT. ANN. § 3:1481(4)(a) (emphasis added).

43.     Thus, prior to Act 752, Louisiana's laws regarding hemp mirrored the 2018 Farm Bill: hemp and other hemp-derived products were *de facto* not cannabis or marijuana under the CDS Law provided the total delta-9 THC did not exceed 0.3 percent by dry weight, which included products that contained more total THC.

44.     Because of and in reliance on these codified protections, Plaintiffs began cultivating, manufacturing, wholesaling, distributing, and retailing hemp and hemp-derived products, including products that were intended for consumption or topical use and contained more than 0.3 percent total THC on a dry weight basis but less than 0.3 percent delta-9 THC on a dry weight basis ("Farm Bill Products").

45.     The hemp-derived cannabinoid market in Louisiana operated smoothly for years. But now this market is threatened with extinction after Governor Landry signed Act 752 on June 19, 2024, because Act 752 redefines industrial hemp solely for purposes of "consumable hemp products."

46.     Act 752's framework was (presumably) intended to criminalize only the sale of consumable hemp products containing a total THC in excess of 0.3 percent by dry weight.[4] This would explain why the R.S. 40:961.1 exemption remained unaffected by Act 752 and monetary

---

[4] *See Hemp Quarters 605 LLC v. Noem*, No. 3:24-CV-03016-ECS, 2024 WL 3250461, at *5–6 (D.S.D. June 29, 2024) (holding South Dakota's amendments to the industrial hemp laws did not interfere with interstate commerce as the regulations would not criminalize possession itself).

fines would be levied on retailers and processors who violate the "consumable hemp product" restrictions. *See* 2024 LA. SESS. L. SERV. Act No. 752 §§ 1482-84.

47.     But Act 752's criminal liability extends beyond sales by altering the definition of "industrial hemp." If Act 752 becomes effective, "industrial hemp" under the Consumable Hemp Act will be determined by *total* THC concentration and not the total *delta-9* THC concentration. *Compare* 2024 LA. SESS. L. SERV. Act No. 752 § 1481(5) *with* LA. STAT. ANN. § 3:1481(6).

48.     Thus, once a derivative, extract, or other downstream hemp product contains more than 0.3 percent total THC on a dry weight basis, it is *no longer industrial hemp* for purposes of consumable hemp products, and any product designed to be consumed or topically applied would not be a "consumable hemp product" exempted from the CDS Law.

49.     In other words, the CDS Law exception only applies to "industrial hemp [and] consumable hemp products as provided for in Parts V and VI . . . ."[5] LA. STAT. ANN. § 40:961.1. But because Farm Bill Products are intended for consumption and containing more than 0.3 percent *total* THC on a dry weight basis (even though their delta-9 THC concentration is less than 0.3 percent), they would no longer be a "consumable hemp product" under the Consumable Hemp Act. And because Farm Bill Products would not be consumable hemp prdoucts, the R.S. 40:961.1 exemption would no longer apply. Farm Bill Products would be classified as *Schedule I substances*. *See* LA. STAT. ANN. §§ 40:961(6), (27), 40:964(C), 40:966(B)(2).

50.     As Schedule I substances, Farm Bill Products would be illegal to *possess*, and individuals who purchased them in a state that defines hemp according to the 2018 Farm Bill and

---

[5] The CDS Law also excludes industrial hemp "in the possession, custody, or control of a person who holds a license issued by the Department of Agriculture and Forestry, or is cultivated and processed in accordance with the U.S. Agricultural Improvement Act of 2018" from the definition of "Marijuana," and for purposes of the CDS Law, industrial hemp is also determined by the percentage of delta-9 THC by dry weight. LA. STAT. ANN. § 40:961(27).

transported the products through Louisiana would be subject to criminal prosecution. *See* LA. STAT. ANN. § 40:966(A).

51.    In short, the State has undercut its intended framework (to outlaw the sale of such products) and has made fewer products fall within the definition of "consumable hemp products." Because Farm Bill Products (which are currently legal) will no longer be "consumable hemp products," they will not be exempt from the CDS Law, and they will be Schedule I substances illegal to possess in Louisiana on January 1, 2025.

52.    Cypress Hemp distributes, wholesales, and retails Farm Bill Products into and through Louisiana, either directly or through third-party distributors. Under Act 752, its employees and agents face criminal liability for possessing, transporting, and shipping these Products.

53.    The Association includes members that cultivate, manufacture, distribute, wholesale, and retail Farm Bill Products in and through Louisiana. Under Act 752, its members face severe monetary fines, the seizure of their products, and potential criminal liability. *See* 2024 LA. SESS. L. SERV. Act No. 752 § 1484(D).

54.    Act 752 also interferes with the interstate transportation and shipment of Farm Bill Products in direct violation of the express language of the 2018 Farm Bill. On its face, if one cannot possess certain hemp products legal under federal law, then one cannot transport or ship it, either.

55.    As a result of Act 752, Plaintiffs are in jeopardy of criminal prosecution and monetary fines if law enforcement personnel enforce Act 752. In that scenario, Plaintiffs will be precluded from cultivating, manufacturing, distributing, wholesaling, retailing, or even possessing an agricultural commodity despite controlling and preemptive federal law.

### COUNT I: DECLARATORY JUDGMENT FOR VIOLATION OF THE 2018 FARM BILL

56.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

57.    An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the lawfulness of hemp and hemp products.

58.    Act 752 places Plaintiffs in jeopardy of criminal prosecution and precludes Plaintiffs from cultivating, manufacturing, distributing, wholesaling, and retailing Farm Bill Products in and through Louisiana.

59.    Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs request a declaration that Act 752 violates the 2018 Farm Bill and is preempted by federal law.

60.    The 2018 Farm Bill legalized all products derived from hemp so long as such products do not contain a delta-9 THC concentration of more than 0.3 percent on a dry weight basis. The 2018 Farm Bill also prohibited states from curtailing the transport and shipment of hemp or hemp products through interstate commerce.

61.    Act 752 violates the 2018 Farm Bill by interfering with the free flow of interstate transportation and shipment of Farm Bill Products.

62.    Act 752 also imposes an impermissible, narrower definition of hemp than mandated by the federal government in the 2018 Farm Bill, despite Congress's declaration that states are not permitted to modify the definition of hemp. If states were permitted to selectively criminalize parts of the hemp plant, it renders the protections Congress provided to hemp and hemp products in the stream of commerce meaningless.

63.    Moreover, by restricting the definition of legal hemp to "consumable hemp products," Act 752 adopts a definition that conflicts with the federal standard, which includes all

derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a *delta-9* THC concentration of not more than 0.3 percent on a dry weight basis.

64.    Act 752 runs counter to the plain and unambiguous reading of the 2018 Farm Bill as well as its intent as evidenced by a letter from the then-Chairman of the House Agriculture Committee Congressman David Scott and the then-House Appropriations Subcommittee on Agriculture, Rural Development, Food and Drug Administration, and Related Agencies to the United States Department of Justice and the DEA:

> Congress did not intend the 2018 Farm Bill to criminalize any stage of legal hemp processing, and we are concerned that hemp grown in compliance with a USDA-approved plan could receive undue scrutiny from the DEA as it is being processed into a legal consumer-facing product under this IFR. That is why the 2018 Farm Bill's definition of hemp was broadened from the 2014 Farm Bill's version to include derivatives, extracts and cannabinoids. It was our intent that derivatives, extracts and cannabinoids would be legal if these products were in compliance [with] all other Federal regulations.

A true and accurate copy of Congressmen's Scott and Bishop, Jr.'s letter is attached as **Exhibit 4**.

65.    Act 752 is also in direct conflict with the DEA's own determinations that hemp-derived cannabinoid products (e.g., delta-8, delta-10, etc.) with no more than 0.3 percent delta-9 THC on a dry weight basis is considered hemp and ***not*** a controlled substance under federal law.

66.    On June 24, 2021, during a recorded Florida Department of Agriculture and Consumer Services webinar, DEA representative Sean Mitchell stated:

> I also just want to expand beyond delta-8. There's delta-8, there's delta-10, there's all kind of different uh cannabinoids that uh are associated with cannabis sativa l that are kind of out there and making the rounds. So what I want to say, and I'll be very, very deliberate and clear. At this time, I repeat again, at this time, per the Farm

Bill, the only thing uh that is a controlled substance is delta-9 THC greater than 0.3% based on a dry weight basis.[6]

67.    On August 19, 2021, the Alabama Board of Pharmacy requested the control status of delta-8 THC under the Controlled Substances Act. On September 15, 2021, the DEA concluded that ". . . cannabinoids extracted from the cannabis plant that have a $\Delta 9$ -THC concentration of not more than 0.3 percent on a dry weight basis meet the definition of 'hemp' and thus are not controlled under the CSA." Furthermore, according to the response, the DEA considers unlawful "synthetic" THC products to be those that are "produced from non-cannabis materials." A true and accurate copy of the DEA's response to the Alabama Board of Pharmacy is attached as **Exhibit 5**.

68.    Furthermore, the DEA's official promulgations in the Federal Register, at 21 C.F.R. § 1308.11(31)(ii), declares that: "(ii) Tetrahydrocannabinols does not include any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639o."

69.    In addition, by criminalizing hemp derivatives, Act 752 prohibits the transport of Farm Bill Products in and through Louisiana in direct contradiction of Section 10114 of the 2018 Farm Bill.

70.    Federal law preempts Act 752, which is in conflict with the 2018 Farm Bill pursuant to the Supremacy Clause of the Constitution of the United States and conflicts of laws principles. U.S. CONST. art. VI, cl. 2.

71.    Plaintiffs have been, and will be, harmed by Act 752, as they are unable to cultivate, possess, manufacture, distribute, wholesale, and retail Farm Bill Products, despite such products having been declared to be legal under federal law.

---

[6] *See Town Hall with USDA and DEA Dated June 29, 2021*, *available at* https://tinyurl.com/mr2n28hx, at 9:00 minutes (last visited July 31, 2023).

**COUNT II: DECLARATORY JUDGMENT FOR VIOLATION OF THE COMMERCE CLAUSE**

72.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

73.    As explained above, Farm Bill Products are hemp products declared legal by the 2018 Farm Bill.

74.    Act 752's effective recriminalization of Farm Bill Products, and its implied prohibition on the transportation of all such hemp products, is a substantial burden on interstate commerce in violation of the Commerce Clause of the Constitution of the United States as there is no federal license to transport finished hemp products. U.S. CONST. art. I, § 8, cl. 3.

75.    Plaintiffs have been, and will be, harmed by Act 752, as they are unable to transport in and through Louisiana hemp-derived cannabinoids products that have been declared legal under federal law.

**COUNT III: DECLARATORY JUDGMENT FOR VIOLATING
THE FIFTH AND FOURTEENTH AMENDMENTS' DUE PROCESS CLAUSES**

76.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

77.    The Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution prohibit criminal enforcement of statutory and regulatory requirements that are unconstitutionally vague and do not give fair warning of their requirements. U.S. CONST. amend. V, XIV.

78.    Act 752's redefinition of "industrial hemp," which eliminates any reference to total delta-9 THC, makes Act 752 unconstitutionally vague such that a person of average intelligence is incapable of discerning whether Farm Bill Products are Schedule I substances illegal to possess.

79.     Under the CDS Law, "marijuana" and "industrial hemp products . . . not in accordance with the U.S. Agricultural Improvement Act of 2018 or the plan submitted by the Department of Agriculture and Forestry that is in compliance with U.S. Department of Agricultural rules" are Schedule I substances illegal to possess. LA. STAT. ANN. §§ 40:964(C)(38), 40:966(A).

80.     The CDS Law defines "marijuana" as:

(a)     [A]ll parts of plants of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

(b)     "Marijuana" shall not include the following:
(i)     *Industrial hemp* that is in the possession, custody, or control of a person who holds a license issued by the Department of Agriculture and Forestry, or is cultivated and processed in accordance with the U.S. Agriculture Improvement Act of 2018. . . .

LA. STAT. ANN. § 40:961(27) (emphasis added). But the CDS Law also provides that, "[n]otwithstanding the definitions provided for in R.S. 40:961(6) [cannabis] and (27) [marijuana], the provisions of the Uniform Controlled Dangerous Substances Law shall not apply to industrial hemp or consumable hemp products as provided for in Parts V and VI of Chapter 10-A of Title 3 . . . ." LA. STAT. ANN. § 40:961.1.

81.     If Act 752 goes into effect, a "consumable hemp product" will be defined as "any product *derived from industrial hemp* that contains any cannabinoid, including cannabidiol or THC, and is intended for consumption or topical use." 2024 LA. SESS. L. SERV. Act No. 752 § 1481(3)(a) (Title 3 Part VI – Consumable Hemp Products) (emphasis added).

82.     Louisiana's Revised Statutes will have at least *three (3) separate definitions* for "industrial hemp":

(a)     "'Industrial hemp' means the plant Cannabis sativa L. and any part of such plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a ***total delta-9*** THC

concentration of not more than 0.3 percent on a dry weight basis." L<small>A</small>. S<small>TAT</small>. A<small>NN</small>. § 3:1462(10) (Title 3 Part V – Industrial Hemp) (emphasis added).

(b)    "'Industrial hemp' or 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a ***total*** THC concentration of not more than 0.3 percent on a dray weight basis." 2024 L<small>A</small>. S<small>ESS</small>. L. S<small>ERV</small>. Act No. 752 § 1481(5) (Title 3 Part VI – Consumable Hemp Products) (emphasis added).

(c)    "'Industrial hemp' means the plant Cannabis sativa and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, and salts of isomers, whether growing or not, with a ***delta-9-***tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis and cultivated and processed in accordance with the U.S. Agriculture Improvement Act of 2018, or the plan submitted by the Department of Agriculture and Forestry that is in compliance with U.S. Department of Agriculture rules." L<small>A</small>. S<small>TAT</small>. A<small>NN</small>. § 40:961(23) (Title 40 Part X – Controlled Dangerous Substances) (emphasis added).

83.    There are several ways to interpret what these various provisions will affect Farm Bill Products, each inconsistent with the other. The following are non-exhaustive examples of Act 752's incompatible meanings:

(a)    *Farm Bill Products are illegal Schedule I substances*. The Consumable Hemp Act would no longer apply to Farm Bill Products because they would not be "consumable hemp products" that are "derived from industrial hemp," so they would be illegal to register and sell. Farm Bill Products would not be regulated under the Industrial Hemp Act (Part V Chapter 10-A of Title 3) either since they are "intended for consumption or topical use." The CDS Law's exemption for "consumable hemp products" would also no longer apply to Farm Bill Products. Thus, because they are no longer "industrial hemp," Farm Bill Products would be classified as "marijuana" under the CDS Law, and they would be illegal to possess per R.S. 40:966.

(b)    *Farm Bill Products are legal to possess but illegal to sell.* All hemp-derived products intended for consumption (regardless of their THC concentration) are regulated by Act

752, despite the Act's restricted definition of "industrial hemp" and its use of the conjunctive "and" when defining "consumable hemp products." In other words, per Act 752, a "consumable hemp product" is (i) "derived from industrial hemp" *and* (ii) intended for consumption or topical use. And Act 752 re-defines "industrial hemp" as hemp products not exceeding 0.3 percent total THC concentration. So for Farm Bill Products to continue to be regulated under Act 752 as a "consumable hemp product," one should only consider the Products' intended use (consumption or topical use) or apply a loose interpretation of "derived from industrial hemp," despite the fact Act 752 re-defined "industrial hemp" to specifically exclude Farm Bill Products. Therefore, Farm Bill Products would be illegal to sell under the amended Act, yet remain legal to possess since they would remain exempted from the CDS Law as "consumable hemp products" under R.S. 40:961.1.

(c)    *Farm Bill Products are legal to possess and sell.* As stated above, Act 752 does not apply to Farm Bill Products because they do not fall within the definition of "consumable hemp product." This means Farm Bill Products would not be regulated at all by the Consumable Hemp Products Act. This creates two alternative avenues for Farm Bill Products to be legal to possess and sell: (i) they are not exempt from the CDS Law but are legal nonetheless; or (ii) they are exempted from the CDS Law under the Industrial Hemp Act.

(i)    Farm Bill Products would be legal under the CDS Law. The CDS Law's definition of "industrial hemp" includes hemp-derived products that do not exceed a 0.3 percent delta-9 THC concentration, regardless of total THC. The CDS Law definition of industrial hemp is an exception to "marijuana," "tetrahydrocannabinols," and "synthetic cannabinoids"—despite the fact that there is no clear "industrial hemp" exception to "synthetic cannabinoids."[7] What's more, it is legal to

---

[7] One can only guess what is meant by "synthetic" as the term is undefined in the CDS Law. Moreover, the CDS Law provides that "any quantity" of synthetic cannabinoids present in a

cultivate, possess, process, and sell industrial hemp under the CDS Law. *See* LA. STAT. ANN. § 40:966(A)(3). Farm Bill Products meet the CDS Law's statutory definition of "industrial hemp." Hence, Farm Bill Products would be legal to possess and sell.

(ii)    Farm Bill Products would be legal under the Industrial Hemp Act. Farm Bill Products fall within the definition of "industrial hemp" per the Industrial Hemp Act. *See* LA. STAT. ANN. § 3:1462(10). Industrial hemp under the Industrial Hemp Act is exempt from the CDS Law per R.S. 40:961.1. And industrial hemp is generally legal to cultivate, manufacture, distribute, wholesale, retail, and possess under the Industrial Hemp Act. *See generally* LA. STAT. ANN. § 3:1461 *et seq*. Therefore, Farm Bill Products would continue to be legal to sell and possess, albeit in a regulated manner.

84.    Moreover, Act 752 is unconstitutionally vague because the State's application of the Act thus far is contradictory with its plain meaning. For example, Act 752 states "A single serving of a consumable hemp beverage shall not exceed five milligrams and shall not be less than twelve ounces." 2024 LA. SESS. L. SERV. Act No. 752 § 1483B(6)(b)(i). And "[t]he department shall not approve . . . [a]ny other consumable hemp product that does not comply with Subsection B of [§ 1483]." *Id.* at § 1483C(2)(e). First, it is not clear how a product can simultaneously "not exceed five milligrams" and "not be less than twelve ounces." Second, the State performed an "internal audit" of consumable hemp products currently registered with the State and notified Plaintiff Hemp Association of Louisiana that its consumable hemp beverage, a seltzer that contains

---

substance renders the entire product a Schedule I substance. *See* LA. STAT. ANN. 40:964(F). Thus, to consistently argue that Farm Bill Products are legal to possess, despite them containing "any quantity" of "synthetic" cannabinoids, Defendants must accept the Fourth and Ninth Circuit Courts' of Appeal analyses of "synthetic" / "derived from" regarding hemp and the 2018 Farm Bill. *See Anderson v. Diamondback Invest. Grp., LLC*, No. 23-1400, 2024 WL 4031401, at *17 (4th Cir. Sept. 4, 2024); *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682 (9th Cir. 2022).

5 milligrams of delta-9 THC and 5 milligrams of CBD, "will not be impacted by Act 752 . . . ." *See* Louisiana Department of Health Product Registration Letter, attached as **Exhibit 7**. This inconsistent enforcement on an issue that should be elementary to apply indicates that even the State is unaware of what its own Act means.

85.    In short, Act 752 creates an unreconcilable rift within industrial hemp statutory scheme by re-defining "industrial hemp" only under the Consumable Hemp Act, and the State will apply the Act in a manner inconsistent with the plain meaning of the Act.

86.    "A regulation is void for vagueness when it is so unclear that people of common intelligence must necessarily guess at its meaning and differ as to its application." *McClelland v. Katy Ind. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023) (internal quotations omitted). "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *Id.*

87.    Act 752 fails to give a person of ordinary intelligence fair notice as to which products are forbidden to possess, sell, or both. Act 752 is also unconstitutionally vague as to what is permitted with regard to the possession, transportation, and shipment of the products it seeks to ban. Plaintiffs and the end-users in the stream of commerce will be left to guess at the meaning of the new law.

88.    Act 752 exposes Plaintiffs to criminal prosecution, and when and to what extent Act 752 applies to Plaintiffs is difficult for even a well-trained lawyer to understand. As enacted, Act 752 is unconstitutionally vague.

### COUNT IV: IN THE ALTERNATIVE, DECLARATORY JUDGMENT THAT ACT 752 DEREGULATES FARM BILL PRODUCTS

89.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

90.    An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the lawfulness of Farm Bill Products.

91.    Act 752 places Plaintiffs in jeopardy of criminal prosecution, monetary fines, loss of licensure/registration, seizure of inventory, and precludes Plaintiffs from cultivating, shipping, distributing, wholesaling, packaging, processing, and retailing Farm Bill Products that are otherwise legal under federal and state law.

92.    In the alternative to the above-requested declarations, and to avoid the potential civil and criminal penalties that will likely be imposed upon them, Plaintiffs request a declaration that Act 752 permits the possession and sale of Farm Bill Products because (A) Act 752 effectively deregulates Farm Bill Products since they are not subject to Act 752 and do not violate the CDS Law; or (B) Farm Bill Products are regulated under the Industrial Hemp Act (Title 3, Chapter 10-A, Part V), which does not restrict their sale or possession.

**A.    Act 752 Deregulates Farm Bill Products**

93.    The Consumable Hemp Act in its entirety (as amended by Act 752) will not apply to Farm Bill Products because the Act only regulates "consumable hemp products" derived from industrial hemp containing no more than 0.3 percent total THC concentration.

94.    Farm Bill Products are not "consumable hemp products" per Act 752 because, even though they are intended for consumption or topical use, they are not "derived from industrial hemp." They are not "derived from industrial hemp" because they contain more than 0.3 percent total THC (but equal to or less than 0.3 percent delta-9 THC concentration) on a dry weight basis.

95.    If Act 752 goes into effect, Farm Bill Products will be scrutinized under the CDS Law because the R.S. 40:961.1 exemption provides that the CDS Law does not apply to "consumable hemp products" per the Consumable Hemp Act.

96.    The CDS Law criminalizes, in relevant part, the manufacture, distribution, and possession of (i) marijuana, (ii) tetrahydrocannabinols, or chemical derivatives of tetrahydrocannabinols, and (iii) synthetic cannabinoids. *See* LA. STAT. ANN. § 40:966.

97.    The CDS Law defines industrial hemp as "the plant Cannabis sativa and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, and salts of isomers, whether growing or not, with a delta-9-tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis and cultivated and processed in accordance with the U.S. Agriculture Improvement Act of 2018, or the plan submitted by the Department of Agriculture and Forestry that is in compliance with U.S. Department of Agriculture rules." LA. STAT. ANN. § 40:961(23).

98.    Farm Bill Products are classified as "industrial hemp" under the CDS Law.

99.    Farm Bill Products are exempted from the definition of marijuana. *See* LA. STAT. ANN. § 40:961(27), 961(23).

100.    THC derived from hemp contained within Farm Bill Products is exempted from the definition of tetrahydrocannabinols. *See* LA. STAT. ANN. § 40:964(C)(65).

101.    Farm Bill Products are exempted from "synthetic cannabinoid."

102.    It is legal to cultivate, possess, process and sell industrial hemp, industrial hemp products, and viable industrial hemp seeds, provided it is done in accordance with the U.S. Agricultural Improvement Act of 2018 or the plan submitted by the Department of Agriculture and

Forestry that is in compliance with the U.S. Department of Agriculture rules. *See* LA. STAT. ANN. § 40:966(A)(3).

103.    Act 752 does not amend the CDS Law or its definition of industrial hemp.

104.    Farm Bill Products will remain legal to cultivate, possess, process, and sell even if Act 752 goes into effect.

**B.    Farm Bill Products Are Legal per the Industrial Hemp Act**

105.    As stated above, Farm Bill Products will no longer be regulated under the Consumable Hemp Act because they are not derived from "industrial hemp" as that term is defined by Act 752.

106.    The Industrial Hemp Act, however, defines "industrial hemp" as cannabis derivatives not exceeding 0.3 percent total delta-9 THC. This definition is substantially the same as the 2018 Farm Bill's definition of "industrial hemp."

107.    It is generally legal to cultivate, manufacture, process, distribute, wholesale, and retail industrial hemp under the Industrial Hemp Act.

108.    Farm Bill Products qualify as "industrial hemp" under the Industrial Hemp Act.

109.    Farm Bill Products would be exempt from the CDS Law since they are "industrial hemp" for purposes of Part V of Title 3 Chapter 10-A.

110.    Plaintiffs have been and will be harmed by Act 752 as there is an imminent threat that Defendants will attempt to use Act 752 to prevent Plaintiffs from cultivating, manufacturing, distributing, wholesaling, retailing, and possessing Farm Bill Products, despite such products having been de-regulated by Act 752 and protected under federal law.

## COUNT V: INJUNCTIVE RELIEF

111.    Plaintiffs allege and incorporate by reference all allegations in the paragraphs above.

112.    Plaintiffs are likely to succeed on the merits of its challenge to Act 752 given that it openly conflicts with the 2018 Farm Bill, the Supremacy and Commerce Clauses, and the Fifth and Fourteenth Amendments to the Constitution of the United States.

113.    Unless enjoined in its entirety, Act 752 already has, and will continue to, cause harm to Plaintiffs by placing them in jeopardy of criminal prosecution and depriving them of the ability to cultivate, manufacture, wholesale, distribute, possess, and retail hemp plants and hemp-derived products that are declared legal by federal law.

114.    Plaintiffs have no adequate remedy at law and face irreparable harm unless this Court enjoins Act 752 in its entirety as described herein. Plaintiffs' irreparable harm includes rendering their inventory of hemp crops and hemp-derived products utterly worthless, exposing them to criminal liability, subjecting them to crushing monetary fines, and inhibiting them from transporting or shipping commodities declared legal under the 2018 Farm Bill.

115.    Plaintiffs are likely to succeed on the merits of this action.

116.    The balance of harms weighs in favor of Plaintiffs, as the injunction will not harm Defendants; it will simply place Defendants back into compliance with federal law.

117.    An injunction is in the public's interests, as Louisiana is not permitted to ignore federal law or undermine Congress's exclusive authority to regulate interstate commerce.

118.    Plaintiffs are entitled to a temporary restraining order, later to be made a permanent injunction, with respect to the Act 752.

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)    Set this matter for a prompt hearing on Plaintiffs' request for injunctive relief;

(b)     Enter judgment in Plaintiffs' favor and against Defendants;

(c)     Declare (i) Act 752 is preempted by the 2018 Farm Bill, thereby violating the Supremacy Clause of the United States Constitution; (ii) Act 752 is unconstitutional for violating the Commerce Clause; (iii) Act 752 violates the Fifth and Fourteenth Amendments' Due Process Clause for being void for vagueness; or, in the alternative, (iv) Act 752 permits the possession and sale of Farm Bill Products.

(d)     Issue a temporary restraining order or preliminary injunction, later to be made permanent, enjoining Defendants (including other persons in concert or participation with them, including but not limited to law enforcement personnel and prosecutors' offices) from enforcing Act 752 in its entirety and from taking any steps to enforce, criminalize, or prosecute the cultivation, possession, manufacture, distribution, wholesale, or retail of Farm Bill Products;

(e)     Award Plaintiffs their costs and attorneys' fees incurred in bringing this action; and

(f)     Award Plaintiffs all other just and proper relief.

Dated this 17 day of October 2024.

/s/  Larry S. Bankston_____
Larry S. Bankston (02744)
Jenna H. Linn, (33246)
Bankston & Associates
8708 Jefferson Highway, Suite A
Baton Rouge, LA 70809
Tel: (225) 766-3800
Fax: (225)766-7800
larry@bblawyers.net
jlinn@bblawyers.net
**ATTORNEYS FOR PLAINTIFFS**

Abtin Mehdizadegan (2013136)
Joseph Stepina (2020124)
Jacob Sutter (2023040)
Hall Booth Smith, P.C.

27

200 River Market Avenue, Suite 500
Little Rock, AR 72201
Tel: (501) 214-3499
Fax: (501) 604-5566
abtin@hallboothsmith.com
jstepina@hallboothsmith.com
jsutter@hallboothsmith.com
**ATTORNEYS FOR PLAINTIFFS**

*Pro hac vice applications forthcoming*